[No. A038425. First Dist., Div. One. May 8, 1987.]

DANIEL McCARTHY, as Director, etc., et al., Petitioners, v.
THE SUPERIOR COURT OF CONTRA COSTA COUNTY,
Respondent;
COUNTY OF CONTRA COSTA et al., Real Parties in Interest.

COUNSEL

John K. Van de Kamp, Attorney General, Steve White, Chief Assistant Attorney General, Paul D. Gifford and Morris Lenk, Deputy Attorneys General, for Petitioners.

No appearance for Respondent.

Victor J. Westman, County Counsel, Arthur W. Walenta, Assistant County Counsel, and Lawrence D. Saler, City Attorney, for Real Parties in Interest.

OPINION

THE COURT*—Petitioners Daniel McCarthy, Director of the California Department of Corrections, Ron E. Koenig, Chairman of the California Board of Prison Terms, Edward Veit, deputy director of the California Department of Corrections, and the California Department of Corrections seek extraordinary relief to compel respondent court to vacate and set aside

---

*Before Racanelli, P. J., Newsom, J., and Holmdahl, J.

its orders denying their motion for change of venue and restraining and enjoining them from returning Lawrence Singleton, a paroled inmate, to the County of Contra Costa. For reasons we shall explain, we determine that state parole officials are statutorily authorized to return a released parolee to the county from which the parolee was committed, i.e., committed to prison, or to such other county as would serve the best interests of the public and the parolee. (Pen. Code, § 3003, subds. (a), (b).) We further determine that the *exercise* of such statutory authority by state parole officials may not be enjoined but is subject to judicial review for any palpable abuse of discretion. Finally, we will conclude that where, as here, the underlying action is brought by a county or other local agency against a nonresident, the action must—upon request—be transferred for trial to a neutral county or, alternatively, heard as a nonjury cause by a disinterested judge from another county assigned by the Chairman of the Judicial Council. (Code Civ. Proc., § 394, subd. (1).)

█ In view of the statewide importance of novel issues presented requiring prompt resolution, and since the matter has been adequately briefed by the parties following due notice to real parties that issuance of a peremptory writ in the first instance would be considered, and because no useful purpose will be served in issuing an alternative writ, we determine that this is a proper case to order the issuance of a peremptory writ in the first instance. (Code Civ. Proc., §§ 1088, 1104; *Palma* v. *U.S. Industrial Fasteners, Inc.* (1984) 36 Cal.3d 171, 177-180 [203 Cal.Rptr. 626, 681 P.2d 893].)

BACKGROUND

In October 1978, the Stanislaus County Grand Jury returned an indictment charging Lawrence Singleton with several aggravated offenses, including attempted murder, perpetrated against a 15-year-old victim, Mary V., whom he had picked up hitchhiking. A change of trial venue to San Diego County was ordered as a result of extensive pretrial publicity. Evidence presented at trial disclosed repeated acts of sexual violence ending, tragically, when Singleton left his victim to die after traumatically amputating her hands. The victim survived to testify, resulting in a jury finding of guilty as to the substantive charges. Singleton was sentenced to an aggregate prison term of 14 and 1/3 years under the then applicable provisions of the determinate sentencing law. (Pen. Code, § 1170 et seq.)[1] The conviction and sentence were affirmed on appeal. (*People* v. *Singleton* (1980) 112 Cal.App.3d 418 [169 Cal.Rptr. 333].) With reduction of the term for good conduct and

---

[1]It may be noted, parenthetically, that the potential aggregate term of imprisonment for similar offenses under current sentencing statutes would exceed 50 years. (See, e.g., Pen. Code, § 667.6, subd. (c).)

related credits provided by statute (Pen. Code, §§ 2900.5, 2931-2933), Singleton became eligible for parole receiving a mandatory release date of April 25, 1987. (Pen. Code, § 3000.) ■ Once a prisoner has served a determinate term, the Board of Prison Terms has no discretion to grant or withhold parole under the mandatory "kick-out" provisions of the governing statute. (*People* v. *Burgener* (1986) 41 Cal.3d 505, 529, fn. 12 [224 Cal.Rptr. 112, 714 P.2d 1251].) In such circumstances, parole is a matter of statutory right no matter how despicable the underlying crime or reprehensible the malefactor.

Singleton's imminent release on parole and anticipated return to a Bay Area community as widely reported have provoked widespread public indignation and led to legal proceedings seeking to prevent parole officials from returning him to communities within Contra Costa County. As a consequence of the temporary restraining order issued by respondent court (as well as that of the San Francisco Superior Court in a separate but related proceeding), parole authorities have been required literally to shunt the parolee from one place to another in their abortive attempts to discharge their official parole responsibilities. Petitioners now seek extraordinary relief including mandamus review of the order denying change of venue (Code Civ. Proc., § 400; see also *Magee* v. *Superior Court* (1973) 34 Cal.App.3d 201, 211, fn. 3 [109 Cal.Rptr. 758] disapproved on another point in *People* v. *Norris* (1985) 40 Cal.3d 51, 56 [219 Cal.Rptr. 7, 706 P.2d 1141]) and temporary restraining order.

Discussion

*Place of Parole*

■ Under the statutory scheme governing parole, the Board of Prison Terms is empowered to establish and enforce rules and regulations concerning parole, including specified terms and conditions of a given parole. (Pen. Code, §§ 3053, 3053.5.) "These conditions may govern the location in which the parolee resides, the persons with whom he associates and lives, the places to which he may travel, his use of intoxicants, and other aspects of his life." (*People* v. *Burgener, supra,* 41 Cal.3d 505, 531.) Prior to the 1982 enactment of Penal Code section 3003,[2] the board and its

---

[2]The statute, as subsequently amended, provides: "(a) An inmate who is released on parole shall be returned to the county from which he or she was committed.

"(b) Notwithstanding subdivision (a), an inmate may be returned to another county in a case where that would be in the best interests of the public and of the parolee. If the authority setting the conditions of parole decides on a return to another county, it shall place its reasons in writing in the parolee's permanent record. In making its decision, the authority may consider, among others, the following factors:

"(1) The need to protect the life or safety of a victim, the parolee, a witness or any other person.

predecessor adult authority had virtually unbridled discretion in placing or returning parolees to a community.

Review of the legislative history of the statute, which we may properly judicially notice (see *Commodore Home Systems, Inc.* v. *Superior Court* (1982) 32 Cal.3d 211, 218, fn. 9 [185 Cal.Rptr. 270, 649 P.2d 912]) is instructive. Assembly Bill No. 2564, as originally introduced by Assembly Member Moorhead, would have required the parole authorities to return a parolee to the jurisdiction from which he or she was committed, without exception. (6 Assem. J. (1981-1982 Reg. Sess.) p. 9994.) The Moorhead bill was introduced in apparent response to an expressed concern that certain counties were becoming "dumping grounds" for many parolees strongly suggesting a need to modify the existing system so that parolees would be more equitably distributed throughout the state. Though initially opposed by the correctional authorities on the grounds that the legislative proposal denied parole authorities necessary discretion to deviate from the policy that parolees be returned to the county of commitment, a revised version of the bill was eventually reported out and passed by the Legislature with the support of those agencies.

The relevant history clearly reflects the legislative intent to "require the board, when releasing an inmate on parole, to return the inmate to the county from which he or she was committed, unless, after consideration including various specified factors, the board determines that it is in the best interests of the public and of the parolee that he or she be returned to another county and places its reasons in writing." (Legis. Counsel's Dig., Assem. Bill No. 2564, 6 Stats. 1982 (Reg. Sess.) Summary Dig., p. 511.)

By its terms, Penal Code section 3003 *mandates* the return of Singleton to the county that *committed* him to state prison, absent a determination by the parole authority that the best interests of the public and parolee require a different county of return. ██ Nevertheless, petitioners argue that the county from which a person was "committed" to prison is the county in which he or she committed the charged crime—here, Stanislaus County. The argument flies in the face of established principles of construction.

---

"(2) Public concern that would reduce the chance that the inmate's parole would be successfully completed.

"(3) The verified existence of a work offer, or an educational or vocational training program.

"(4) The last legal residence of the inmate having been in another county.

"(5) The existence of family in another county with whom the inmate has maintained strong ties and whose support would increase the chance that the inmate's parole would be successfully completed.

"(6) The lack of necessary outpatient treatment programs for parolees receiving treatment pursuant to Section 2960.

"(c) An inmate may be paroled to another state pursuant to any other provision of law."

■ "When statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it." (*People* v. *Overstreet* (1986) 42 Cal.3d 891, 895 [231 Cal.Rptr. 213, 726 P.2d 1288].) However, "courts resist blind obedience to the putative 'plain meaning' of a statutory phrase where literal interpretation would defeat the Legislature's central objective." (*Leslie Salt Co.* v. *San Francisco Bay Conservation etc. Com.* (1984) 153 Cal.App.3d 605, 614 [200 Cal.Rptr. 575].)

■ It is noteworthy that the Legislature has elsewhere used the terms "commitment" or "committed" to indicate the procedure by which a court of competent jurisdiction orders a defendant into the custody of an officer until legally discharged. (See, e.g., Pen. Code, §§ 875, 876, 877, 877a, and 881.) Thus, it is reasonable to conclude that the Legislature intended a similar meaning in adopting the language contained in section 3003.

Still, it is at least arguable that parole authorities invariably would treat the county in which the offense was committed as the county from which a prisoner was committed. While the background materials provided indicate that the Legislature was aware of Department of Corrections' parallel guidelines when it passed Assembly Bill No. 2564, there is no indication that it was likewise aware of the department's interpretation thereof which neglected to consider the effect of a change of venue in defining the term "committed." Moreover, a reading of the term "committed" to mean the county from which the defendant was sentenced clearly implements the Legislature's intention to equitably distribute parolees statewide, particularly in view of the broad discretion granted to the board under subdivision (b) to alter the legislative mandate where appropriate.

The parties argued below on the assumption Singleton had been "committed" to prison from Stanislaus County. As noted, Singleton was tried and sentenced in San Diego County, a fact apparently overlooked by the parties until raised by this court's letter requiring briefing of the issue. Indeed, the submitted declaration of Howard Veit, deputy director of the Parole and Community Services Division of the Department of Corrections,[3] recites that Singleton was not being paroled to *Stanislaus* County "because of threats and hostile communications" he made to the prosecutor from that county. Although the Veit declaration recites the considerations outlined in section 3003, subdivision (b), including Singleton's earlier Nevada residency, the department determined "not [to] place him in that state" notwithstanding its omission to discuss possible placement with Nevada authorities under the Uniform Act for Out-of-State Probationer or Parolee Supervision.

---

[3]Although the Veit declaration was not before respondent, on an original petition for mandamus relief, the reviewing court in its discretion may consider it together with all other relevant evidence. (*Bruce* v. *Gregory* (1967) 65 Cal.2d 666, 670-671 [56 Cal.Rptr. 265, 423 P.2d 193].)

(Pen. Code, § 11175 et seq.) Apparently, the board's focus on Contra Costa County placement was largely based on Singleton's previous residency in the City of San Pablo and possible employment opportunities in the Bay Area.

The Veit declaration also noted that an "anonymous" placement was infeasible for several reasons: virtually all local law enforcement authorities had lodged requests to be notified of persons paroled within their jurisdiction pursuant to Penal Code section 3058.5; the board's adoption of a policy to notify state legislators whenever "high profile inmates are to be paroled within their districts"; the department's belief that Singleton would not cooperate with an anonymous placement; and in any case, Singleton's compulsory requirement to register as a sex offender with local law enforcement authorities under the provisions of Penal Code section 290.

Plainly, the board's apparent intention to return Singleton to Contra Costa County in the first instance, would flout the explicit statutory mandate and constitute an abuse of discretion. ■ "[C]ourts will interfere by mandamus when the action taken by the board is 'so palpably unreasonable and arbitrary as to indicate an abuse of discretion as a matter of law.' [Citations.]" (*Sanders* v. *City of Los Angeles* (1970) 3 Cal.3d 252, 261 [90 Cal.Rptr. 169, 475 P.2d 201].) ■ Since it is unrefuted that the board never understood or considered that Singleton was required to be returned to San Diego County as "the county from which he . . . was committed" (Pen. Code, § 3003, subd. (a)), its intended decision to return him to another county in the first instance is palpably erroneous. Whether the parole authority may in the exercise of its discretion return Singleton to a county other than the sentencing county turns upon strict compliance with the legislative mandate and specified criteria.[4] Efforts to correct any perceived shortcomings in the existing statute regulating parole placement must be addressed to the Legislature and not the courts.

*Propriety of Injunctive Relief*

■ We agree with petitioners' contention that respondent lacked jurisdiction to issue a temporary restraining order herein. Injunctive relief will not lie "[t]o prevent the execution of a public statute by officers of the law for the public benefit." (Code Civ. Proc., § 526, subds. 2, 4; Civ. Code, § 3423, subd. Fourth; see *Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 401 [128 Cal.Rptr. 183, 546 P.2d 687]; *City of Los Angeles* v. *Superior Court* (1959) 51 Cal.2d 423, 430 [333 P.2d 745].) And this court has since upheld the facial constitutional validity of section 3003.[5]

---

[4]We strongly urge the board to promptly perform its parole responsibilities in compliance with its statutory duty.

[5]The statute as it then read did not contain subdivision (6).

(*Koenig* v. *Prison Law Office* (1986) 181 Cal.App.3d 737 [226 Cal.Rptr. 728].) None of the recognized exceptions to this fundamental rule apply herein. (Cf. *Associated Cal. Loggers, Inc.* v. *Kinder* (1978) 79 Cal.App.3d 34, 45 [144 Cal.Rptr. 786].)

Of course, an actual decision made by the parole authority to release or return Singleton to another county is subject to review by traditional mandamus to determine whether the authority's exercise of discretion was palpably unreasonable. (*Sanders* v. *City of Los Angeles, supra,* 3 Cal.3d 252, 261.) To allow a challenge by a complaint for injunctive relief, as sought below, would eviscerate the statutory mandate by directing the board to exercise its discretion in a particular manner. (See *People* ex rel. *Younger* v. *County of El Dorado* (1971) 5 Cal.3d 480, 491 [96 Cal.Rptr. 553, 487 P.2d 1193]; *Jacobs* v. *State Bd. of Optometry* (1978) 81 Cal.App.3d 1022, 1034 [147 Cal.Rptr. 225]; *Salute* v. *Pitchess* (1976) 61 Cal.App.3d 557, 560 [132 Cal.Rptr. 345].)

Indeed, the unusual circumstances reflected herein pointedly illustrate the Legislature's wisdom in prohibiting injunctive relief against public officers' performance of official duties prescribed by a duly enacted statute. The problems attendant upon placement of parolees involve matters of statewide interest and concern. If local jurisdictions or agencies were indiscriminately permitted to obtain injunctive relief, either temporary or permanent, to prevent the return of undesirable parolees to their respective jurisdictions, then the legislative purpose underlying enactment of section 3003 would be seriously undermined. It cannot be overstated that as an ordered and democratic society, we live under a system of laws which must be fairly applied and justly administered. Any alleged abuse of power by a public official is equally subject to judicial review and appropriate remedy under established principles of law found applicable.

### Venue

Respecting the venue issue, real parties contend that the action was properly filed in Contra Costa County pursuant to Code of Civil Procedure section 393, subdivision (1)(b), which in relevant part provides that the county in which the action arose is the proper place for trial of a claim against "a public officer or person specially appointed to execute his duties, for an act done by him in virtue of his office." ■ As petitioners contend, however, that code section has been held to be inapplicable where—as is clearly the case here—the complaint is directed to actions merely threatened rather than actually taken. (*Regents of the University of California* v. *Superior Court* (1970) 3 Cal.3d 529, 537, fn. 10 [91 Cal.Rptr. 57, 476 P.2d 457]; cf. *Stoneham* v. *Rushen* (1982) 137 Cal.App.3d 729, 734, fn. 5 [188 Cal.Rptr. 130].)

Here, while the complaint seeks injunctive relief based upon petitioners' alleged *decision* to parole Singleton to Contra Costa County, it is the prospective act of physically returning the subject to the county that is challenged. Accordingly, based upon the cited authorities, we conclude that Code of Civil Procedure section 393, subdivision (1) is not a proper basis for venue.

■ A separate basis for venue is assertedly found in Government Code section 955.3, which provides that "[n]otwithstanding any provision of law" a county may sue the state where the county is located, subject to change of venue under Code of Civil Procedure section 397. On closer analysis, however, the sweeping language of Government Code section 955.3 is found to have been greatly constricted by decisional law, limited, in fact, to the subject matter of the same division, which refers merely to money or damage claims against public entities. Thus, where an action was brought against the California New Motor Vehicles Board to prohibit further action suspending or revoking a temporary sales permit, our high court held that the provisions of Code of Civil Procedure section 393, subdivision (1)(b) prevailed, and that Government Code section 955 was inapplicable because the matter at issue was not one involving ". . . claims for money or damages for which the filing of a claim is a statutory prerequsite or actions on claims for money or damages . . . specifically exempted from the filing requirement." (*Tharp v. Superior Court* (1982) 32 Cal.3d 496, 501 [186 Cal.Rptr. 335, 651 P.2d 1141].)

■ Irrespective of the correctness of the bases advanced for venue in Contra Costa County, however, we are convinced that the trial court erred in refusing to grant petitioners' motion for change of venue pursuant to Code of Civil Procedure section 394, which in essence provides that whenever a county sues a resident of another county, the action *must* either be removed to a neutral forum, or request made to the Chairman of the Judicial Council for assignment to the plaintiff county of a disinterested judge. (Cf. *San Francisco Foundation* v. *Superior Court* (1984) 37 Cal.3d 285, 293 [208 Cal.Rptr. 31, 690 P.2d 1].)

Our state Supreme Court has repeatedly expressed the central purpose of Code of Civil Procedure section 394 to be "to guard against local prejudices" (*San Francisco Foundation* v. *Superior Court, supra,* 37 Cal.3d at p. 296 and cases cited therein), and has directed lower courts to construe the statute liberally to that end. (*Westinghouse Electric Corp.* v. *Superior Court* (1976) 17 Cal.3d 259, 266 [131 Cal.Rptr. 231, 551 P.2d 847].) And here, of course, the opportunity to obviate the mere appearance of possible local prejudice may be accomplished by the pro tempore assignment of a neutral county judge as contemplated by the statute.

■ The petition and declarations in support of the motion to change venue contain sufficient averments of residency outside Contra Costa

County of a least one defendant—the Director of Corrections. Since the right to removal under Code of Civil Procedure section 394 is personal to each defendant, such averments suffice to warrant change of venue here irrespective of the presence of other defendants who may be residents of the county. (*City of Oakland* v. *Darbee* (1951) 102 Cal.App.2d 493, 498-499 [227 P.2d 909]; *Westinghouse Electric Corp.* v. *Superior Court, supra,* 17 Cal.3d 259, 275.)

We have concluded for the reasons given that the trial court erred in declining to grant the motion to change venue. And since the timely filing of that motion legally suspends the court's power to act regarding the merits of the action, it follows that all injunctive orders of the court are null and void. (*County of Riverside* v. *Superior Court* (1968) 69 Cal.2d 828, 831 [73 Cal.Rptr. 386, 447 P.2d 626].) As to such ancillary matters as may be necessary to the implementation of our decision, including reference of the cause to a neutral county or hearing by an assigned disinterested judge, the court is, of course, free to act. (Cf. 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, §§ 666, 667, pp. 684-685, and cases collected therein.)

### DISPOSITION

Let a peremptory writ of mandate issue commanding the Contra Costa County Superior Court to do the following: 1) in action No. 300021, to set aside its temporary restraining order and to grant the motion for change of venue to a neutral county or, alternatively, to request assignment of a disinterested judge as provided by statute; 2) in action No. 300046, to set aside any and all orders made either simultaneously with or after the filing of the motion for change of venue and to grant said motion as above provided.

Pending issuance of the remittitur herein, the effect of any and all orders made by respondent in action Nos. 300021 and 300046 either simultaneously with or subsequent to the filing of the motion for change of venue are stayed.

This opinion is final as to this court immediately. (Cal. Rules of Court, rule 24(d).)