[No. C003930. Third Dist. Aug. 22, 1989.]

MARIAN COOKE et al., Petitioners, v.
THE SUPERIOR COURT OF BUTTE COUNTY, Respondent;
BUTTE COUNTY BOARD OF SUPERVISORS et al., Real Parties
in Interest.

COUNSEL

Lucy Quacinella, Standley L. Dorn, Melinda R. Bird, Richard A. Rothschild and Robert D. Newman for Petitioners.

Paul A. Lombardo, Ralph Murphy, Jodie Berger and Philip J. Bertental as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Susan Roff, County Counsel, Robert A. Glusman, Price, Price, Brown & Halsey and Philip B. Price for Real Parties in Interest.

Victor J. Westman, County Counsel (Contra Costa), and Arthur W. Walenta, Assistant County Counsel, as Amici Curiae on behalf of Real Parties in Interest.

OPINION

SIMS, J.—In this case we consider the level of dental care counties must furnish to indigent residents in order to comply with Welfare and Institutions Code sections 10000 and 17000.[1] (Further statutory references are to the Welfare and Institutions Code unless otherwise noted.) We conclude petitioners must be provided with dental care sufficient to remedy substantial pain and infection. However, we shall deny petitioner's request for writ relief, because the Butte County Board of Supervisors has recently adopted a resolution indicating its willingness to provide the requisite dental care.

FACTUAL AND PROCEDURAL BACKGROUND

Petitioners Marian Cooke, Doris McKinley and Deborah Whitehead (petitioners) are plaintiffs in a class action pending in respondent superior

---

[1] Welfare and Institutions Code section 10000 provides: "The purpose of this division is to provide for protection, care, and assistance to the people of the state in need thereof, and to promote the welfare and happiness of all of the people of the state by providing appropriate aid and services to all of its needy and distressed. It is the legislative intent that aid shall be administered and services provided promptly and humanely, with due regard for the preservation of family life, and without discrimination on account of race, national origin or ancestry, religion, sex, marital status, or political affiliation; and that aid shall be so administered and services so provided, to the extent not in conflict with federal law, as to encourage self-respect, self-reliance, and the desire to be a good citizen, useful to society."

Welfare and Institutions Code section 17000 provides: "Every county and every city and county shall relieve and support all incompetent, poor, indigent persons, and those incapacitated by age, disease, or accident, lawfully resident therein, when such persons are not supported and relieved by their relatives or friends, by their own means, or by state hospitals or other state or private institutions."

court.[2] As alleged in the pleadings, petitioners are indigent residents of Butte County (County). The County is required to provide petitioners and their class with health services, including dental care. The County does so, through a contract under the County Medical Services Program (CMSP). However, the only dental care provided is emergency care limited to (1) reduction of oral/maxillofacial fractures and dislocations, and (2) treatment of alveolar abscesses through antibiotics, pain medication and extraction only. The County does not provide any diagnostic, preventive, therapeutic or restorative dental care to deal with pain or infection.

Petitioners alleged the County's level of dental care did not satisfy its statutory duties. They sought a writ of mandate to compel the County's compliance under section 17000, section 10000, and Health and Safety Code section 1442.5. The action also sought a preliminary and permanent injunction and declaratory relief.[3]

Petitioners noticed a motion for a preliminary injunction, seeking to enjoin the County from failing to provide them with specific care and to provide the class with medically necessary dental care, including that available to Medi-Cal recipients.

Petitioners submitted declarations stating (1) they are indigent residents of the County who have been found eligible for county health care, including dental care; and (2) they suffer specific dental disease, pain and infection for which the County does not provide treatment. More particularly, the declarations state the following: Petitioner Cooke has had a problem with a front tooth, which is painful and throbs constantly. The gum is swollen. She cannot chew on the tooth or brush it due to pain. Cooke saw a dentist but could not afford his fee for a root canal. The County denied Cooke's request for assistance, because the County covers only emergency extractions.

Petitioner McKinley suffers from heart disease. In November 1987, she lost a filling. The tooth is sensitive to hot and cold. She cannot chew or put pressure on the tooth because of severe pain. McKinley cannot afford to have the tooth filled, and the County has informed her it does not cover fillings.

Petitioner Whitehead has had a history of dental problems. She has numerous cavities and cannot eat anything crunchy without losing pieces of

---

[2] Reginald A. Mason et al. v. Butte County Board of Supervisors, Superior Court No. 96251.

[3] The pleading also asks for reimbursement from the County for costs of dental care paid by or on behalf of class members. However, reimbursement was not sought in the notice of motion for preliminary injunction. The issue was not before the trial court and is not before us in this proceeding, despite petitioners' passing reference to it. We express no view on the right to reimbursement.

her teeth. She is in pain when she tries to eat anything hard. She is studying to be a nurse and believes good teeth are important to her employability.

Petitioners also submitted declarations from dentists stating that petitioners need root canal and other treatment, and that dental diseases of the type suffered by petitioners pose serious health risks if left untreated. Thus, William Moon, D.D.S., stated he examined Cooke and observed an infected tooth. Because of the presence of the bacteria, once a clinical abscess forms, the tooth would be more difficult to treat. The infection can result in fever and swelling severe enough to shut an eye. Infection can also influence other parts of the body. Cooke has had a hip replacement, and the spread of infection could cause her body to reject the prosthetic device.

Kevin Campbell, D.D.S., examined Whitehead and determined she needed root canal treatment to prevent the formation of abscesses. Abscesses are to be avoided, because infection at the root of a tooth is painful, can cause swelling and fever, and constitutes a serious health problem.

Petitioners' assertions that they suffered pain and infection and were unable to obtain treatment were undisputed by the County. Nor did the County dispute that the only dental care it provides is the limited emergency care available under its contract with the CMSP. Instead, the County submitted declarations from two doctors in support of its position that the statute requires only "basic survival," and teeth are not necessary for basic survival. Stanley Nuzum, D.D.S., as dental program consultant to the state Department of Health Services, views the CMSP level of dental services as providing those services that are "necessary for basic survival and minimum subsistence." Dentistry offers alternative services that can relieve pain and preserve health and life. For instance, abscesses may be treated either through root canal or extraction. The former is sometimes referred to as "cadillac dentistry" and is not necessary for basic survival.

Dr. Ward, a medical doctor and health officer for the County, declared that the dental diseases untreated by the County are neither communicable nor life-threatening. The CMSP standard is sufficient to protect life and preserve the capability to consume an adequate diet.

The County's opposition to the motion also pointed out that the County could not afford an increased level of dental care, and that the state should be brought into the action as a necessary party. The state has not been brought in as a party.

On December 24, 1987, the trial court denied the preliminary injunction, ruling that petitioners were unlikely to prevail on the merits.

On February 26, 1988, petitioners filed this petition for writ of mandate and temporary stay order to direct the trial court to issue an order granting

the requested preliminary injunction. ■ ▬ ■ ■ We issued an alternative writ.[4]

Since issuance of the alternative writ, petitioners have submitted supplemental declarations to this court describing further deterioration of their condition. ■ Because equitable principles apply in mandamus proceedings, we may properly consider all relevant evidence, including facts not existing until after the petition for writ of mandate was filed. (*Bruce v. Gregory* (1967) 65 Cal.2d 666, 670-671 [56 Cal.Rptr. 265, 423 P.2d 193]; *McCarthy* v. *Superior Court* (1987) 191 Cal.App.3d 1023, 1030, fn. 3 [236 Cal.Rptr. 833].)

The supplemental declarations show that petitioner Cooke's front tooth has become loose, and she has trouble sleeping due to constant pain. Petitioner Whitehead developed an abscess. She suffered pain because the County covers only two types of pain medication, both of which make her nauseous. Several of her teeth have broken off. A further abscess caused facial swelling so severe that her eye was half shut and started to turn black.

Following oral argument in this court, the County asked that we take judicial notice of Resolution No. 89-011, adopted by the County on January 31, 1989, increasing the level of available dental services to include procedures "necessary to alleviate substantial pain, to treat infection, to maintain basic function, to maintain adequate nutrition, and to care for dental conditions which present a serious health risk." In an appropriate case, these procedures may include amalgam restorations, anterior root canals, denture repair and other necessary services. We asked the parties to submit supplemental briefing on the propriety of our taking judicial notice of the resolution. (See Evid. Code, §§ 455, 459, subd. (c).) For reasons that follow, we shall take judicial notice of the resolution.

---

[4]As a procedural matter, we reject the County's contention that petitioners' underlying complaint is insufficient to support a preliminary injunction. A preliminary injunction is warranted only if there is a complaint on file which states a sufficient cause of action for injunctive relief. (*Moreno Mut. Irr. Co.* v. *Beaumont Irr. Dist.* (1949) 94 Cal.App.2d 766, 778 [214 P.2d 392].) Here, petitioners' fourth cause of action seeks to enjoin and prohibit the County from refusing to provide necessary dental care to eligible low income County residents. Thus, petitioners have sought relief of the character sought by the preliminary injunction. (*Ibid.*)

We also find the petition filed in this court alleges facts sufficient to justify judicial relief and hence overrule the County's demurrer.

Finally, we reject the County's contentions the absence of a trial transcript is fatal to this petition. Although California Rules of Court, rule 56(c)(4) requires that a writ petition be accompanied by the transcript or a reason for its absence, the County does not contend it is prejudiced by the absence of the transcript. We have all documents submitted by the parties to the trial court and the benefit of extensive briefing by all parties sufficient to make our determination.

DISCUSSION

## I. *Standards of Review*

Mandamus is issued "to compel the performance of an act which the law specially enjoins, . . ." (Code Civ. Proc., § 1085.)[5] Mandamus will not generally lie to control the exercise of judicial discretion, unless under the facts, that discretion can be exercised in only one way. (*Robbins* v. *Superior Court* (1985) 38 Cal.3d 199, 205 [211 Cal.Rptr. 398, 695 P.2d 695].)

 Ordinarily, two tests govern the decision whether to issue a preliminary injunction. The trial court (1) balances the interim harm to the parties and (2) determines whether the plaintiff is likely to prevail on the merits. (*Cohen* v. *Board of Supervisors* (1985) 40 Cal.3d 277, 286 [219 Cal.Rptr. 467, 707 P.2d 840].) In an ordinary case, we would simply review the trial court's exercise of discretion in refusing the preliminary injunction. Here, however, another factor influences our decision whether to issue a writ: the County's recent adoption of Resolution No. 89-011, increasing its level of dental care. Our review will include that resolution because we consider the law and facts as they exist at the time of making our determination whether to issue a writ. (*People* v. *Stockton Pregnancy Control Medical Clinic, Inc.* (1988) 203 Cal.App.3d 225, 233 [249 Cal.Rptr. 762], citing *Hays* v. *Wood* (1979) 25 Cal.3d 772, 782 [160 Cal.Rptr. 102, 603 P.2d 19]; *White* v. *Davis* (1975) 13 Cal.3d 757, 773, fn. 8 [120 Cal.Rptr. 94, 533 P.2d 222]; *McCarthy* v. *Superior Court, supra,* 191 Cal.App.3d at p. 1030, fn. 3.)

In *Poverty Resistance Center* v. *Hart, ante,* page 295 [261 Cal.Rptr. 545], we explained why the County's provision of care under sections 10000 and 17000 is ultimately subject to judicial review. (*Id.* at p. 305.)[6] We need not replicate that discussion here. Rather, we shall turn to the allegations of statutory inadequacy in the County's dental care program.

## II. *Petitioners' Statutory Entitlement*

Petitioners contend (1) they are entitled to all dental services available to private patients; (2) they are entitled to the Medi-Cal standard of dental

---

[5]Mandamus is proper where there is no plain, speedy, adequate remedy in the ordinary course of law. (Code Civ. Proc., § 1086.) Denial of preliminary injunction is an appealable order, and petitioners here have filed an appeal. (C003955.) However, we necessarily determined that appeal was not an adequate remedy when we issued the alternative writ. (See *Robbins* v. *Superior Court* (1985) 38 Cal.3d 199, 205 [211 Cal.Rptr. 398, 695 P.2d 695].)

[6]In *Poverty Resistance Center,* we discussed the standard of review of a county's action in setting levels of general assistance based on the evidentiary predicate of studies of the actual cost of living. That evidentiary question is not implicated here. As the parties concede, this case presents a question of law, i.e., the facial validity of the County's dental care policy.

care; (3) the CMSP level of care was insufficient; (4) Resolution No. 89-011 is insufficient; and (5) the writ is necessary because the county may rescind the resolution.

The County contends (1) section 10000's "humane" mandate refers to the manner rather than the level of services; (2) the statutes require only a basic survival standard of care; (3) fiscal constraints limit its ability to provide dental care; and (4) the increased level of services provided by its recently adopted resolution meets the County's statutory duties and renders this petition moot.

A. *The County Need Not Provide Medically Indigent Adults the Same Level of Services Available to Private Patients.*

■ Petitioners contend Health and Safety Code section 1442.5 requires the County to provive them the same level of services available to private patients.[7] This contention lacks merit.

---

[7] Health and Safety Code section 1442.5 provides: "Prior to closing a county facility, eliminating or reducing the level of services provided, or prior to the leasing, selling, or transfer of management, the board shall provide public notice, including notice posted at the entrance to all county health care facilities, of public hearings to be held by the board prior to their decision to proceed. Such notice shall be posted not less than 30 days prior to such public hearings. The notice shall contain a detailed list of the proposed reductions or changes, by facility and service. The notice shall include, but not be limited to, the amount and type of each proposed change, the expected saving, and the number of persons affected.

"The board shall make findings based on evidence and testimony from these hearings that their proposed action will or will not have a detrimental impact on the health care needs of the indigents of the county. Such findings shall be included as part of the official public hearing record.

"Notwithstanding the board's closing of a county facility, the elimination of or reduction in the level of services provided, or the leasing, selling, or transfer of management of a county facility subsequent to January 1, 1975, the county shall provide for the fulfillment of its duty to provide care to all indigent people, either directly through county facilities or indirectly through alternative means.

"(a) Where this duty is fulfilled by a contractual arrangement with a private facility or individual, the facility or individual shall assume the county's full obligation to provide care to those who cannot afford it, and make their services available to Medi-Cal and Medicare recipients.

"(b) Where this duty is fulfilled by alternative means, the facility or individual providing services shall be in compliance with Sections 441.18 and 1277.

"(c) Whether this duty is fulfilled directly by the county or through alternative means, the availability of services, and the quality of the treatment received by people who cannot afford to pay for their health care shall be the same as that available to nonindigent people receiving health care services in private facilities in that county.

"(d) The board shall designate an agency to provide: a 24-hour information service which can give eligible people immediate information as to the available services and access to them and an agency to receive and respond to complaints from people eligible for services

Health and Safety Code section 1442.5 is part of the County Medical Facilities Act (Health & Saf. Code, div. 2, ch. 2.5, § 1440 et seq.). Health and Safety Code section 1441 authorizes counties to establish and maintain county hospitals. Health and Safety Code section 1442.5 requires public notice and hearings before a county takes action to close or transfer management of a facility, or to reduce the level of services. Such action can then be taken, but a county must continue, directly or indirectly, to fulfill its duty to the indigent. (Health & Saf. Code, § 1442.5.) Whether a county fulfills its duty directly (through other county facilities) or indirectly (through private providers), "the availability of services, and the quality of treatment received by people who cannot afford to pay for their health care shall be the same as that available to nonindigent people receiving health care services in private facilities in that county." (Health & Saf. Code, § 1442.5, subd. (c).)

Contrary to petitioners' contention, this language does not require counties to shoulder the expense of providing indigents every medical service potentially available to private patients.

The County Medical Facilities Act was a response to a rash of county hospital closings that left medically indigent patients without alternative care. (*Darley* v. *Ward* (1982) 136 Cal.App.3d 614, 624-625 [186 Cal.Rptr. 434]; Note, *County Hospitals in Crisis: Legislative Response to Assure Indigent Health Care* (1977) 10 U.C. Davis L.Rev. 331, 345.) Private providers were reluctant to accept these patients, due to such problems as low reimbursement rates, extensive paperwork, and lag in processing claims. (Note, *op. cit supra,* at p. 355.) "A general history of less-than-enthusiastic service to indigents by private providers raise[d] some concern with regard to how consistently private care might be provided." (*Id.* at pp. 355-356.)

Health and Safety Code section 1442.5 is inapposite to this case, because it is a limitation on a county's ability to close facilities or reduce services provided in those facilities. (*Darley* v. *Ward, supra,* 136 Cal.App.3d at pp. 624-625.) The record before us tenders no claim that any county facility was closed nor that any services in any county facility were reduced.

under this chapter. The designated agency may be the agency which operates the facility. This subdivision shall apply only in instances in which there is a closing of a county facility, an elimination or reduction in the level of services provided, or the leasing, selling, or transfer of such a county facility.

"(e) The board shall arrange for all facilities or individuals contracting to provide services to indigent people to be listed in the local telephone directory under county listings, and shall specify therein that such facilities or individuals fulfill the obligations of county facilities.

"The provisions of Section 25371 of the Government Code do not relieve the county of the obligation to comply with the provisions of this section."

Health and Safety Code section 1442.5 does not require the County to provide petitioners the same level of services as are available to private patients.

**B.** *The County Need Not Provide the Medi-Cal Standard of Care.*

Petitioners contend they are entitled, at a minimum, to the level of dental care provided by Medi-Cal. The contention is not well taken.

Medi-Cal is California's medical assistance program under the federal Medicaid Act, title XIX of the Social Security Act of 1956. (See *Morris* v. *Williams* (1967) 67 Cal.2d 733, 738 [63 Cal.Rptr. 689, 433 P.2d 697].) The program provides medical benefits for eligible needy persons who are aged, blind, disabled, or in families with dependent children. (§ 14000 et seq.) Medi-Cal covers basic diagnostic, preventive, therapeutic and restorative dental services. Subject to limitations, this includes examinations, X-rays, cleanings, root canals, crowns, and dentures. (§ 14132, subd. (h); Cal. Code Regs., tit. 22, § 51307.) Section 14059.5 provides that the listed services are available when "medically necessary," i.e., when "reasonable and necessary to protect life, to prevent significant illness or significant disability, or to alleviate severe pain."

Before 1983, Medi-Cal covered medically indigent persons, such as petitioners, who were unable to meet the cost of health care. (Former §§ 14005 and 14051, Stats. 1966, Second Ex. Sess. 1965, ch. 4, § 2, pp. 105, 110; former § 14005.1 et seq.; Stats. 1971, ch. 577, §§ 5-23, pp. 1109-1115.) Even though the Medi-Cal program helped counties meet their obligations under section 17000, the program did not supplant the counties' section 17000 duties. (*Madera Community Hospital* v. *County of Madera* (1984) 155 Cal.App.3d 136, 151 [201 Cal.Rptr. 768].)

Effective January 1, 1983, the Legislature eliminated medically indigent adults from the Medi-Cal program and began transferring funds to counties for consolidation with county health services. (Stats. 1982, ch. 1594, § 86, p. 6357.) County health services are governed by section 16700 et seq. To assist small counties in this endeavor, the Legislature created the CMSP, under which small counties could contract with the state Department of Health Services to provide medical care. (§ 16709.) Here, the County has done so. Nevertheless, a county contracting with the department "shall not be relieved of its indigent health care obligation under Section 17000." (§ 16709, subd. (c).)[8] The CMSP level of dental services includes only emergency reduction of fractures/dislocations and treatment of alveolar ab-

---

[8] Unlike the County's section 17000 duty, the CMSP level of benefits is limited by fiscal considerations. (§ 16709, subd. (j).)

scesses by pain medication, antibiotics and extraction. This level of care was insufficient to remedy the infection and pain experienced by petitioners.

Petitioners claim the County must now provide them with the Medi-Cal standard of care, because the county health services statutes (§ 16700 et seq.) cross-reference the Medi-Cal statutes (§ 14000 et seq.). Petitioners point to section 16704, subdivision (c)(1) [restricting expenditures from County Health Services Fund to "services specified in Sections 14132 and 14021"]; section 16704.1 [county cannot charge fee before rendering "medically necessary services"]; and section 16706.1, subdivision (e) [county must document it has provided reasonable access to necessary services rendered pursuant to section 17000]. From their selective reading of the statutes, petitioners assume a legislative intent that does not exist. The CMSP program enactment, read in its entirety, shows that elimination of medically indigent adults from the Medi-Cal program did not impose a Medi-Cal standard of care on the counties.

First, section 16704 (allocation of funds from county health services fund), cited by petitioners, goes on to state: "This section shall not be construed to mandate that a county provide any specific level or type of health care service . . . ." (§ 16704, subd. (c)(3).)[9] This language in itself defeats petitioners' argument.

Moreover, it does not follow that because funds shall be spent only for Medi-Cal type services that all types of Medi-Cal services must be provided. The obvious purpose of the cross-references is to ensure that state funds are spent only on health care. (See § 16706, subd. (c)(2) [department is authorized to recoup inappropriately expended funds].)

Furthermore, when the Legislature enacted the CMSP program, it declared its intent was to eliminate persons from the Medi-Cal program, not to shift Medi-Cal standards to counties. Thus, the enactment states: "In eliminating medically indigent adults from the Medi-Cal program, it is the intent of the Legislature to transfer funds to the counties for the provision of health care services. These funds shall be consolidated with existing county health services funds in order to provide health services to low-income persons and other persons not eligible for the Medi-Cal program. In furtherance of this intent, all counties shall implement the provisions of this act relating to medically indigent adults by January 1, 1983. However, counties, at their discretion, may implement the service consolidation provi-

---

[9] Subdivision (c)(3) of section 16704 states that the subdivision, which also addresses the absence of additional state funding, will only be operative until June 30, 1985, unless a later enacted statute extends or deletes that date. Since this paragraph remains in the statute despite three subsequent amendments to the statute, the statute's life was implicitly extended. (Stats. 1987, ch. 1124, § 1; Stats. 1988, ch. 573, § 3; Stats. 1988, ch. 1441, § 5; *Pierce* v. *County of Solano* (1923) 62 Cal.App. 465, 468 [217 P. 545].)

sions of section 16717 of the Welfare and Institutions Code at any time prior to January 1, 1983, if a contract has been signed pursuant to Section 14005.10[10] of the Welfare and Institutions Code. [¶] *It is further the intent of the Legislature to provide counties with as much flexibility as possible* in organizing county health services to serve the population being transferred." (Stats. 1982, ch. 1594, § 86, p. 6357, italics added.)

These reasons compel the conclusion that petitioners are not entitled to a Medi-Cal standard of dental care.

C. *Because the County Must Furnish Dental Care Humanely, the County May Not Limit Dental Services to an Extent Which Compels Patients to Live With Infection or Chronic Pain.*

Petitioners also contend the CMSP level of care forced them to live with untreated infection and chronic pain contrary to section 10000's command that relief be humanely administered. We agree.

In considering this question, we are keenly aware of the fiscal plight of many counties within our jurisdiction. Counties have experienced severe economic hardships in the wake of Proposition 13. The effects of these hardships are well known: police, fire, and other services are curtailed; libraries close. Counties must find a way to provide many essential services while having only limited means of raising revenues with which to pay for them. For whatever reason, the Legislature has seen fit to place a large portion of the burden of caring for the indigent upon those units of government—the counties—least able to generate necessary revenues.[11]

However, these practical concerns cannot permit this court to disregard the statutory command that relief be provided humanely. (§ 10000; *Robbins, supra,* 38 Cal.3d at pp. 208-209, see fn. 1, *ante,* p. 404.) A lack of funds

---

[10]Section 14005.10 was an interim provision that allowed early assumption of responsibility by counties in exchange for a higher appropriation of state funds until January 1, 1983. This higher appropriation was conditioned on assurances that a county would continue the Medi-Cal standard of care, *excluding dental benefits,* until January 1, 1983. (Former § 14005.10, subds. (a) and (b), Stats. 1982, ch. 1594, § 21, p. 6316.) Section 14005.10 was repealed by its own terms on December 31, 1982. (Stats. 1982, ch. 328, § 6.5, p. 1575, amended Stats. 1982, ch. 1594, § 21, p. 6318.)

The Legislature did not intend to continue requiring these assurances after January 1, 1983. (See former § 14005.16, subds. (a) and (c), Stats. 1982, ch. 328, § 8.5, p. 1576; repealed by Stats. 1982, ch. 1594, § 23, p. 6318 [conditions placed on receiving funds after January 1, 1983, were eligibility and spending criteria; no mention of level of benefits].)

Thus, even for the short, optional period for which Medi-Cal standards could be imposed on counties, the Legislature specifically excluded dental benefits.

Here, the record does not suggest that the County assumed early responsibility under former section 14005.10.

[11]We express no opinion on whether any increases in benefit levels arising from this action constitute a state-mandated cost.

is no defense to a county's obligation to provide statutorily required benefits. (*Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 680 [94 Cal.Rptr. 279, 483 P.2d 1231]; *Poverty Resistance Center* v. *Hart, supra, ante,* p. 303; see also *Boehm* v. *County of Merced* (1985) 163 Cal.App.3d 447, 451 [209 Cal.Rptr. 530]; *Madera Community Hospital* v. *County of Madera, supra,* 155 Cal.App.3d at p. 151; *City and County of San Francisco* v. *Superior Court* (1976) 57 Cal.App.3d 44, 47 [128 Cal.Rptr. 712].) In section 10000 the Legislature has decreed that counties must provide care "humanely," and it is this court's duty to give that declaration meaning.

In its brief, the County contends section 10000's command that "aid shall be administered and services provided promptly and humanely," does not refer to the *kind* of services to be provided but only the *manner* in which they are provided. Thus, according to the County, section 10000 does not mandate the provision of any services at all so long as any services provided are provided humanely. Reduced to its practical consequences, the County's contention would mean it could satisfy its section 17000 obligation by providing an aspirin to an indigent person dying of malaria so long as the provider said, "Sorry about the aspirin. It's all we've got. We *do* hope it helps you die with dignity."

We think the County's construction of section 10000 leads to absurdity which must be avoided. (*People* v. *Morris* (1988) 46 Cal.3d 1, 15 [249 Cal.Rptr. 119, 756 P.2d 843]; *People* v. *Aston* (1985) 39 Cal.3d 481, 492 [216 Cal.Rptr. 771, 703 P.2d 111]; *People* v. *Barry* (1987) 194 Cal.App.3d 158, 181 [239 Cal.Rptr. 349].) It cannot be the case that the Legislature intended counties could provide *in*humane levels of care to the poor. Indeed, the County wisely conceded at oral argument it must provide a humane level of care, and we so hold.

The County also views section 17000 as requiring only those services necessary for "basic survival," citing *Boehm* v. *Superior Court* (*Boehm II*) (1986) 178 Cal.App.3d 494 [223 Cal.Rptr. 716]. The County believes the limited emergency care under CMSP satisfies this standard. However, *Boehm II, supra,* does not stand for the proposition that a county need assist only when life is threatened. The *Boehm II* court merely held that a county's assistance levels must contain certain substantive components for basic survival, such as food, shelter, utilities, clothes, transportation and medical care. (*Id.* at pp. 500-502.)

Section 17000 requires counties to provide "medical care," not just emergency care. (*Bay General Community Hospital* v. *County of San Diego* (1984) 156 Cal.App.3d 944, 957 [203 Cal.Rptr. 184].) To the extent the County's level of care is limited to providing emergency care, it is invalid on that basis alone. (*Ibid.*)

This leaves the question whether the County satisfied its obligation to provide humane care by providing dental care that allowed indigent persons to live with substantial dental pain and infection. We conclude the care was not humane. Clearly that level of care does not satisfy section 10000's command that "aid shall be so administered and services so provided . . . as to encourage self-respect, self-reliance, and the desire to be a good citizen useful to society."

At the same time, we must reject petitioners' contention they need good teeth and a picture-perfect smile in order to succeed in the workplace. Courts must give statutes a reasonable construction which conforms to the apparent purpose and intention of the lawmakers. (*Webster* v. *Superior Court* (1988) 46 Cal.3d 338, 344 [250 Cal.Rptr. 268, 758 P.2d 596], quoting *Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 813 [114 Cal.Rptr. 577, 523 P.2d 617].) Thus, we must circumscribe the command for "humane" health care within reasonable limits. Many people survive in the workplace in a wide variety of occupations with imperfect teeth. It is not inhumane for the County to decline to pay for cosmetically pleasing teeth. Rather, we believe "humane" care is that level of care which remedies the pain and infection which petitioners have needlessly endured.[12]

The County also contends Propositions 13 and 4 (enacting articles XIII A and XIII B to the state Constitution) impliedly repealed section 17000 insofar as it may require the County to spend beyond its fiscal means. We disagree. Repeals by implication are disfavored by the law. (*People* v. *Siko* (1988) 45 Cal.3d 820, 824 [248 Cal.Rptr. 110, 755 P.2d 294].) This is especially so where, as here, the extent of the repeal is amorphous and must depend on the fiscal condition of each affected county.

III. *Resolution No. 89-011 Meets the Level of Care Required by Statute*

On January 31, 1989, after oral argument in this court, the County adopted Resolution No. 89-011, increasing its level of dental care. We requested supplemental briefing from the parties on the effect of the resolution. The County contends the resolution renders this petition moot. Petitioners argue the resolution is insufficient to fulfill the County's duty. Alternatively, petitioners urge that the public interest requires issuance of the writ, because the County may rescind the resolution.

---

[12] *Cowan* v. *Myers* (1986) 187 Cal.App.3d 968 [232 Cal.Rptr. 299] is not to the contrary. There, we did not consider whether the Medi-Cal Act (also governed by § 10000) required treatment for "painful and contagious disorders" which are not life-threatening. (*Id.* at p. 981.)

■ Preliminarily, we reject petitioners' contention judicial notice of the resolution is improper. Evidence Code section 452, subdivision (b), allows judicial notice of regulations and legislative enactments of public entities. Contrary to petitioners' implication, the statute does not require that legislative action be taken by ordinance rather than resolution. Moreover, records of a county are properly noticed under Evidence Code section 452, subdivision (c) [official acts of the state], because counties are legal subdivisions of the state. (*Edna Valley Assn.* v. *San Luis Obispo County etc. Coordinating Council* (1977) 67 Cal.App.3d 444, 449-450 [136 Cal.Rptr. 665]; 1 Witkin, Cal. Evidence (3d ed. 1986) Judicial Notice, § 98, p. 85.) We take judicial notice of the resolution.

■ The County's Resolution No. 89-011 states in pertinent part: "Dental services to be provided will be those procedures necessary to alleviate substantial pain, to treat infection, to maintain basic function, to maintain adequate nutrition, and to care for dental conditions which present a serious health risk." (Res. No. 89-011, § I-A.) Subject to prior authorization, the health officer "shall authorize additional services which may include but shall not be limited to amalgam restorations, anterior root canals, denture repair and other services found necessary to alleviate substantial pain, treat infection, maintain basic function, maintain adequate nutrition and care for dental conditions which present a serious health risk." (Res. No. 89-011, § I-C.) The health officer's decision is subject to review by the County's welfare department. (Res. No. 89-011, § II-C.)[13] (Res. No. 89-011 at p. 2, par. 2.)

This resolution, on its face, provides a level of care sufficient to satisfy the County's obligations under sections 10000 and 17000. It casts a different light on this proceeding, because petitioners and their class no longer have a present grievance requiring extraordinary relief.[14] Nevertheless, petitioners

---

[13] Eligibility is defined by the income and resource level allowed by the General Assistance Program. Petitioners make a passing assertion, without citation to authority, that the resolution's eligibility criteria exclude some indigent county residents who exceed the General Assistance eligibility criteria yet receive health care under the CMSP. As a general rule, counties have extensive authority to set standards of eligibility for aid provided under section 17000. (*Mooney* v. *Pickett, supra,* 4 Cal.3d at p. 680.) Petitioners have not raised in this proceeding any factual question regarding the sufficiency of the County's General Assistance eligibility criteria. The only claims tendered to us by petitioners relate to the level of dental care. Those claims have been remedied. If petitioners now wish to assert additional claims, those issues are to be addressed in the first instance by the trial court.

[14] Future questions may arise with implementation of the resolution. For example, the resolution directs the Board to use its "best effort" to provide sufficient funds to administer the program. (Res. No. 89-011, § III.) As we have seen, the County's duty is not limited by availability of funds. Therefore, any denial of service due to lack of funds would violate the County's duty and subject it to new petitions for relief. However, we will not assume a future failure to comply with the law. As the court stated in *George* v. *Beaty* (1927) 85 Cal.App. 525, 531 [260 P. 386]: "[M]andamus is in no sense a preventative remedy." (Italics in original.)

argue a peremptory writ is necessary, because the resolution does not provide all that petitioners sought. This argument fails because, as we have seen, petitioners were asking for a higher level of care than the statute requires.

"If the respondent shows a willingness to perform without coercion, the writ may be denied as unnecessary; and if he shows actual compliance, the proceeding will be dismissed as moot." (8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 73, p. 712, citing *Bruce* v. *Gregory, supra,* 65 Cal.2d 666, and *George* v. *Beaty, supra,* 85 Cal.App. 525.)

We believe the County's enactment of the resolution shows a good faith willingness to perform sufficient to make our issuance of a writ inappropriate.

Petitioners urge a continuing need for a peremptory writ, because the County may change its mind and rescind the resolution.[15] They also do not trust the County's health officer to make the right decision on requests for services requiring authorization.[16] A similar argument was rejected in *George* v. *Beaty, supra,* 85 Cal.App. 525. There, the petitioners argued the supervisors, having belatedly resolved to proceed with construction of a dam mandated by the voters, might later change their mind and adopt a different policy. The court held: "The board of supervisors have [*sic*] taken all action which we might at this time compel them to take and we cannot assume that they will not continue [to perform]. In fact, we are bound to presume, in line with the presumption contained in subsection 15 of section 1963 of the Code of Civil Procedure [now Evid. Code, § 664] 'that official duty' will be 'regularly performed.' " (*George, supra,* 85 Cal.App. at pp. 528-529.) The court acknowledged this rule imposes "continued vigilance" upon the petitioners; "However, if it were otherwise courts might be continually called

---

[15] Petitioners contend that voluntary cessation of misconduct does not render a petition moot where the misconduct may recur. However, the cases cited by petitioner do not control here, because they involved appeals from judgment or involved no change in the conduct underlying the dispute. (See, e.g., *Marin County Bd. of Realtors, Inc.* v. *Palsson* (1976) 16 Cal.3d 920 [130 Cal.Rptr. 1, 549 P.2d 833] [appeal from judgment, disapproved on other grounds in *State of California* ex rel. *Van de Kamp* v. *Texaco, Inc.* (1988) 46 Cal.3d 1147, 1169 [252 Cal.Rptr. 221, 762 P.2d 385]]; *Volkswagenwerk Aktiengesellschaft* v. *Superior Court* (1973) 33 Cal.App.3d 503 [109 Cal.Rptr. 219] [trial court's "rescission" of challenged discovery orders did not render proceeding moot where plaintiffs continued to pursue similar discovery].) Petitioners' authorities do not support any continuing need for extraordinary relief in this case.

[16] Prior authorization is permissible. Since the County may define which services are available, it is proper to enforce this definition prior to provision of services in appropriate circumstances. (*Cowan* v. *Myers* (1986) 187 Cal.App.3d 968, 983-987 [232 Cal.Rptr. 299].) Although *Cowan* involved Medi-Cal standards, the same principle applies here.

upon to direct and supervise the conduct of public officials . . . ." (*Id.* at p. 531.)

Accordingly, we refuse to assume bad faith on the part of the County or its Health Officer. Instead, we presume official duty will be regularly performed and the County will comply with the law. (*Erven* v. *Board of Supervisors* (1975) 53 Cal.App.3d 1004, 10120[126 Cal.Rptr. 285] [citing Evid. Code, § 664]; *George* v. *Beaty, supra,* 85 Cal.App. at pp. 529-532.) Should the County fail to supply the requisite dental care, petitioners may obtain relief in the superior court.

The separation of powers doctrine prohibits judicial interference with legislative action, including the legislative function of a local body, in the absence of fraud, corruption or action exceeding legislative powers. (*City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 915-916, fn. 7 [120 Cal.Rptr. 707, 534 P.2d 403].) Here, the County has made a reasonable effort to comply with its statutory duty, and we see no reason to interfere.

### DISPOSITION

The petition for a peremptory writ of mandate is denied. The alternative writ is discharged.

Puglia, P. J., and Marler, J., concurred.