[No. A068949. First Dist., Div. One. Aug. 30, 1995.]

MARY WASHINGTON et al., Plaintiffs and Appellants, v.
COUNTY OF CONTRA COSTA, Defendant and Respondent.

**COUNSEL**

Conrad G. Tuohey, Ferdinand V. Gonzalez, Patricia Poole-Khatib, Oliver A. Jones, Suane A. Thompson and R. Nicholas Haney for Plaintiffs and Appellants.

Victor J. Westman, County Counsel, and Gregory C. Harvey, Deputy County Counsel, for Defendant and Respondent.

## OPINION

**STEIN, J.**—Appellants are three of the several thousand plaintiffs[1] seeking relief for injuries resulting from the alleged airborne release of hazardous material stored at General Chemical Company (GCC) in Richmond, California. The present appeal is from the judgment of dismissal as to defendant and respondent Contra Costa County (the County) entered after the court sustained the County's demurrer to appellants' complaints without leave to amend, and from the court's reaffirmation of that ruling after granting appellants' motion for reconsideration. We will affirm.

### BACKGROUND

The complaints alleged, generally, that GCC operated a sulfuric acid manufacturing facility. On the morning of July 26, 1993, GCC employees were unloading "acutely hazardous materials" stored in rail tank cars. It was alleged that "the loading of Acutely Hazardous Materials, including Oleum, Sulfur Dioxide, Sulfur Trioxide, and Fuming Sulfuric Acid to, and from, Rail Tank Cars was not a normal or even an occasional event at the GCC Facility . . . and . . . had never been attempted prior to [that time.]" The employees became concerned about the potential for a release of the materials, but GCC nonetheless continued to unload the tank cars. The complaint further alleged that a release had in fact occurred in connection with the loading of the tank car at issue, but that the release "was never reported to the general public, . . . nor to the appropriate governmental regulatory agencies and entities, as required by law." GCC had failed to obtain "the permits from the appropriate governmental regulatory agencies and entities, which permits are necessary for the loading and unloading of Acutely Hazardous Materials to and from Rail Tank Cars." The tank car began to leak. A safety valve on the car ruptured with the result that the contents of the car were released, creating a toxic cloud that caused injuries to residents of the surrounding areas, which residents included the plaintiffs.

The complaints stated various causes of action against the County (causes of action 18 through 26). Plaintiffs sought damages on theories of allowing a public and private nuisance to exist, allowing a dangerous condition to exist, negligence, and violation of civil rights. The primary theory asserted against the County, however, and, as will be discussed, the dispositive theory, was that the County had failed in the duties imposed on it by chapter 6.95 of the Health and Safety Code pertaining to the regulation of the handling, release and threatened release of hazardous materials. Plaintiffs

---

[1] Although each appellant filed a separate complaint, they contain identical allegations, and will be considered together here.

alleged that the County failed to implement and enforce "mandatory enactments" and regulations designed to protect the public, and failed to take required actions to protect the public after the release of the acutely hazardous materials. Plaintiffs accordingly sought damages, mandamus and injunctive relief.

The trial court, after taking judicial notice of six documents submitted by the County relating to its regulation of GCC's activities, sustained without leave to amend the County's demurrers to all causes of action alleged against it. Plaintiffs moved for reconsideration, claiming that the County had failed to produce a number of documents sought by plaintiffs in discovery, which documents disclosed that the County did indeed have a mandatory duty to protect the public from the dangers resulting from the release of the hazardous material. The trial court granted the motion for reconsideration, took judicial notice of the exhibits submitted by plaintiffs in support of its claim, but again sustained the County's demurrers without leave to amend. We will affirm.

## DISCUSSION

### I.

A demurrer properly is granted when the pleadings fail to state facts sufficient to constitute a cause of action. (Code Civ. Proc., § 430.10, subd. (e).) In determining if a complaint is subject to demurrer, the court considers not only the face of the complaint, but any facts judicially noticed. (*Teachers Management & Inv. Corp.* v. *City of Santa Cruz* (1976) 64 Cal.App.3d 438, 444 [134 Cal.Rptr. 523].) "[I]t is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry* v. *Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 967 [9 Cal.Rptr.2d 92, 831 P.2d 317].) Where, as here, a demurrer has been granted without leave to amend, the "reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citation.] The court does not, however, assume the truth of the contentions, deductions or conclusions of law. [Citation.]." (*Id.* at pp. 966-967.)

### II.

#### Mandatory Statutory Duty

Liability for the failure to take certain actions may not, of course, exist absent a duty to take those actions. In California, governmental tort

liability must be based on statute. (Gov. Code, § 815; *Fox* v. *County of Fresno* (1985) 170 Cal.App.3d 1238, 1241 [216 Cal.Rptr. 879].) Plaintiffs theorize that the County failed to comply with mandatory statutory duties when it failed to protect them from the release of the hazardous material. The relevant legal principles were summarized in the recent case of *Braman* v. *State of California* (1994) 28 Cal.App.4th 344, 348-349 [33 Cal.Rptr.2d 608]: "The gateway to recovery is Government Code section 815.6, which provides: 'Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge that duty . . . .' Before the state will be required to confront a rebuttable presumption of negligence [citations], plaintiff must demonstrate that: (1) the statute which was violated imposes a mandatory duty, (2) the statute was intended to protect against the type of harm suffered, and (3) breach of the statute's mandatory duty was a proximate cause of the injury suffered. [Citations.]" Questions of statutory immunity do not become relevant until it has been determined that the defendant otherwise owes a duty of care to the plaintiff and thus would be liable in the absence of such immunity (*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 201-202 [185 Cal.Rptr. 252, 649 P.2d 894]). However, a defendant may not be held liable for the breach of a duty if such an immunity in fact exists. (Gov. Code, § 815.)

"A plaintiff asserting liability under Government Code section 815.6 'must specifically allege the applicable statute or regulation.' [Citation.]" (*Brenneman* v. *State of California* (1989) 208 Cal.App.3d 812, 817 [256 Cal.Rptr. 363].) In *Sullivan* v. *County of Los Angeles* (1984) 12 Cal.3d 710 [117 Cal.Rptr. 241, 527 P.2d 865], for example, the plaintiff alleged that the defendant had failed in the duty imposed by Penal Code section 1384 to release him from prison once the charges against him had been dismissed. Similarly, in *Papelian* v. *State of California* (1976) 65 Cal.App.3d 958 [135 Cal.Rptr. 665], it was alleged that that the defendant had failed in the duty imposed by Vehicle Code section 12805 to deny driver's licenses to persons unable to operate a motor vehicle safely. ▆▆ Plaintiffs here, however, do not appear to focus on any particular statute as the basis for their claim of statutory mandatory duty, but seem to be arguing that a general duty to protect them arises out of chapter 6.95 of the Health and Safety Code (Health & Saf. Code, § 25500 et seq.) as a whole. They point out that a number of the statutes contained in chapter 6.95 include mandatory language, arguing, generally, that it must be concluded that the County therefore has a general mandatory duty to ensure that there will be no uncontrolled release of hazardous material. It is not enough that some statute contains mandatory language. In order to recover plaintiffs have to show that

there is some *specific* statutory mandate that was violated by the County, which violation was a proximate cause of the accident. (*Braman* v. *State of California*, *supra*, 28 Cal.App.4th at pp. 348-349.) In addition, any such violation cannot form the basis of liability if the County is granted statutory immunity from such liability. We are unable to find anything in chapter 6.95 specifically directing an "administering agency," such as the County, to prevent any release of hazardous material, and, as will be explained below, we conclude that none of the specific directives that *are* contained in chapter 6.95 support a cause of action under the facts alleged by plaintiffs.

Article 1 of chapter 6.95 of the Health and Safety Code, entitled Business and Area Plans, concerns the development and review of business plans relating to the handling and release or threatened release of hazardous material. In essence, relevant businesses are required to develop and submit to the administering agency (here, the County), business plans for emergency response to the release of a hazardous material. The County is directed to review the plan, and also to develop an "area plan" for emergency response to such a release or threatened release. (Health & Saf. Code, §§ 25503, 25503.5, 25505.) The trial court here took judicial notice of the County's area plan and of the business plan submitted by GCC to the County. It follows that the pleadings and the matters judicially noticed state no grounds for claiming the County failed to receive GCC's plan or failed to develop an area plan.

Health and Safety Code section 25505.5 provides: "Notwithstanding any other provision of law, no public entity shall be held liable for any injury or damages resulting from an inadequate or negligent review of a business plan conducted pursuant to Section 22505." It follows that the County may not be held liable for any negligence in its review of the business plan submitted by GCC, even if such negligence might be found to be a proximate cause of plaintiffs' injuries. Health and Safety Code section 25503, subdivision (e)(1) further requires the administering agency to submit the basic provisions of a plan to conduct on-site inspections of businesses, which inspections "shall ensure compliance with this chapter and shall identify existing safety hazards that could cause or contribute to a release and, where appropriate, enforce any applicable laws and suggest preventative measures designed to minimize the risk of the release of hazardous material into the workplace or environment." Health and Safety Code section 25508 provides, in part, that ". . . the administering agency shall conduct inspections of every business subject to this article at least once every three years to determine if the business is in compliance with this article." The County submitted a copy of its report of its 1992 inspection of GCC's facility, and the court took judicial notice of the report. The complaint therefore stated no grounds for holding the County liable for failing to conduct inspections. Moreover, subdivision

(e)(1) of section 25503 also provides: "The requirements of this paragraph do not alter or affect the immunity provided a public entity pursuant to Section 818.6 of the Government Code." Section 818.6 immunizes a public entity from liability "for injury caused by its failure to make an inspection, or by reason of making an inadequate or negligent inspection, of any property, . . . for the purpose of determining whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety." The County, therefore, may not be held liable for any negligence in its inspections of GCC's property even if such inspections, if properly done, would have prevented the accident at issue. We find no other statute in Article 1 from which it might be argued that the County had a statutory duty, the breach of which was a cause of the plaintiffs' injuries.[2]

Article 2 of chapter 6.95 of the Health and Safety Code, entitled Hazardous Materials Management, concerns the prevention of uncontrolled releases of hazardous materials. Health and Safety Code section 25534, subdivision (a) requires the administering agency to make a preliminary determination "whether there is a significant likelihood that the handler's use of an acutely hazardous material may pose an acutely hazardous materials accident risk." If the administering agency determines that there is a significant likelihood of risk, "it shall require the handler to prepare and to submit an RMPP [risk management and prevention program]." (Health & Saf. Code, § 25534, subd. (a)(1).) The court took judicial notice of the risk management and prevention program (RMPP) submitted by GCC to the County. It follows that the pleadings state no grounds for liability resulting from the failure of the County to require or obtain an RMPP from GCC. Health and Safety Code section 25537 provides, "The administering agency shall inspect every [relevant] business . . . at least once every three years to determine whether the business is in compliance with this article." It also, however, provides: "The requirements of this section do not alter or affect the immunity provided a public entity pursuant to Section 818.6 of the Government Code." As noted above, the County conducted the required inspection. Under Government Code section 818.6 it is immune from any negligence that may have occurred in conducting the inspections. We find no other statute in article 2 from which it might be argued that the County had a statutory duty, the breach of which was a cause of the plaintiffs' injuries.

No other article of chapter 6.95 has any bearing whatsoever on this case. The complaint, accordingly, states no grounds for holding the County liable

---

[2]Plaintiffs argue that the County had mandatory statutory duties to submit to the Office of Emergency Services (1) the basic provisions of a plan to conduct on-site inspections, and (2) a data management system to assist in the efficient access to and utilization of information collected under chapter 6.95. We do not see how any failure in these duties could be deemed a proximate cause of plaintiffs' injuries.

for the breach of a mandatory statutory duty. To the extent that the plaintiffs alleged injuries proximately caused by the failure to perform a statutory duty, the pleadings and matters judicially noticed disclosed that the County did what it was required to do. The immunities apply to prevent liability for any negligence committed by the County in carrying out those duties. We therefore conclude that no specific statutory mandate was violated by the County.

Under the circumstances we find that we need not consider whether the general governmental immunity for discretionary, as opposed to mandatory, acts (see Gov. Code, §§ 815.2, 820.2), provides additional grounds for sustaining the demurrer. We will, however, consider whether the County nonetheless might be held liable on the grounds that it had a "special relationship" with plaintiffs, a claim inherent in a number of the authorities cited by plaintiffs. In *Johnson* v. *State of California* (1968) 69 Cal.2d 782, 786 [73 Cal.Rptr. 240, 447 P.2d 352], the court explained: "[The] cases impose a duty upon those who create a foreseeable peril, not readily discoverable by endangered persons, to warn them of such potential peril." In *Johnson*, for example, the state owed a duty to the plaintiff when it requested her to provide a foster home for a youth. The court held, "[a]s the party placing the youth with Mrs. Johnson, the state's relationship to plaintiff was such that its duty extended to warning of latent, dangerous qualities suggested by the [youth's] history or character." (*Id.* at p. 785.) The County here did not *create* a foreseeable peril. Its duties were to oversee businesses, such as GCC, to see that such businesses did not create a foreseeable peril. We already have concluded that those statutes defining the County's duty to oversee businesses for this purpose cannot form the basis of any liability on the facts alleged in the complaints. Moreover, it has been recognized that the duty to warn in "special relationship" cases arises only when there is a direct or continuing relationship between the state and a particular, identifiable, plaintiff. (See *Brenneman* v. *State of California, supra*, 208 Cal.App.3d at p. 820; *Thompson* v. *County of Alameda* (1980) 27 Cal.3d 741, 754-758 [167 Cal.Rptr. 70, 614 P.2d 728, 12 A.L.R.4th 701].)

 In all events, yet another immunity—that contained in Health and Safety Code section 25400—applies to any general claim that the County owed a duty to protect the public from the release of hazardous materials. Section 25400, subdivision (b) provides in part, ". . . a public entity . . . shall not be liable for any injury or property damage caused by an act or omission taken by a county public health director, a public safety employee, . . . a person authorized by a public entity, or a registered sanitarian employee acting within the scope of employment to abate or attempt to abate hazards reasonably believed to be an imminent peril to

public health and safety caused by the discharge, spill or presence of a hazardous substance, unless the act taken or omission was performed in bad faith or in a grossly negligent manner." In light of the complaint's allegations that the accident was the result of GCC's abnormal activities and its failure to report the situation to the appropriate public authorities, the pleadings fail to state facts from which it might be concluded that the County or its employees acted with gross negligence or in bad faith.

## III.

### *Plaintiffs' Other Theories for Recovery*

 Plaintiffs stated causes of action for allowing a public and private nuisance and allowing a dangerous condition to exist. Government Code section 835 permits suits against governmental entities for dangerous conditions of property, but only if the property is owned or controlled by the governmental entity. (Gov. Code, § 830, subd. (c); *Blakely* v. *State of California* (1980) 108 Cal.App.3d 971, 976 [167 Cal.Rptr. 1].) Similarly, a governmental entity may not be held liable for failing to abate a nuisance existing on private property. (*Fox* v. *County of Fresno, supra,* 170 Cal.App.3d 1238, *passim.*) The property here was privately owned and the alleged nuisance also was private. Plaintiffs can recover on these theories, therefore, only if they can show the existence of some overriding mandatory statutory duty. We have found that they cannot. Plaintiffs also stated a cause of action for negligence. Again, absent some duty on the part of the County, there can be no negligence, and we have found no relevant duty owed plaintiffs by the County. Finally, plaintiffs stated a cause of action for violation of civil rights. As this cause of action also was predicated on the claim that the County owed a duty to plaintiffs to protect them from the effects of the release of hazardous material, and as we have found no such duty, this cause of action falls with the others stated by plaintiffs.

## IV.

### *Discovery*

We find it unnecessary to consider plaintiffs' arguments concerning the alleged failure of the County to permit discovery of certain documents or concerning the court's related rulings. The question of mandatory statutory duty and governmental immunities depends not on any documents that might be discovered, but on our analysis of the Government and Health and Safety Codes.

## V.

### *Judicial Notice*

■ Finally, we find no error or abuse of discretion in the trial court's decision to take judicial notice of the documents submitted by the County. Judicial notice of such documents is permitted by Evidence Code section 452, subdivision (c), authorizing notice of "Official acts of the legislative, executive, and judicial departments of the United States and of any state of the United States." (See *Cooke* v. *Superior Court* (1989) 213 Cal.App.3d 401, 416 [261 Cal.Rptr. 706].) Plaintiffs' complaint is not with the nature of the documents judicially noticed, but with the quality of them. As the quality of documents has no bearing on the question of whether the documents may be judicially noticed, plaintiffs' arguments are irrelevant. To the extent the arguments are that the documents do not demonstrate that the County properly performed its statutory duties, they are again irrelevant. The governmental immunities discussed above preclude liability for improper or negligent performance.

The judgment is affirmed.

Strankman, P. J., and Dossee, J., concurred.

A petition for a rehearing was denied September 27, 1995, and appellants' petition for review by the Supreme Court was denied November 16, 1995.