Filed 2/24/26  Selkin v. City of Los Angeles CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
## SECOND APPELLATE DISTRICT
## DIVISION FIVE

| | |
|---|---|
| PINK SELKIN et al., | B342433 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. Nos. BC718464, 19STCV12627 19STCV15125, 20STCV12594, 20STCV27209, 22STCV21711) |
| CITY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from the judgment of the Superior Court of Los Angeles County, Frank M. Tavelman, Judge.  Affirmed.

Aitken✦Aitken✦Cohn, Wylie A. Aitken and Megan G. Demshki; Frantz Law Group, James P. Frantz, William P. Harris and Jason R. Dawson; Niddrie│Addams│Fuller│Singh and Victoria E. Fuller for Plaintiffs and Appellants.

Hydee Feldstein Soto, City Attorney, Denise C. Mills, Chief Deputy City Attorney, Kathleen A. Kenealy, Chief Assistant City Attorney, Shaun Dabby Jacobs, Supervising Assistant City Attorney and Brian Cheng, Deputy City Attorney for Defendant and Respondent.

A fire in a commercial building killed two individuals and severely burned a third. Plaintiffs sued defendant and respondent the City of Los Angeles (City) under the Government Claims Act (Gov. Code, § 810 et seq., "the Act"),[1] alleging that the City was liable under section 815.6, based on its failure to carry out a mandatory duty to abate obvious building and safety code violations. The trial court granted the City's motion for summary judgment, finding that the inspection immunity provided by Government Code section 818.6 barred any potential liability.

Plaintiffs contend that the scope of section 818.6 inspection immunity is not broad enough to cover liability based on information obtained independent from any inspection. According to plaintiffs, the City had a mandatory duty under various municipal codes and state statutes to ensure building safety based on City employees' actual observation of safety violations outside the context of any inspection.

The City contends that the inspection immunity statute, which has been broadly applied to protect public entities from liability in varied circumstances, bars liability here. The City also contends that plaintiffs have not raised a triable issue of fact about whether it was under a mandatory duty to act.

We affirm, because regardless of whether plaintiffs have identified a specific mandatory statutory duty that the City failed to carry out with reasonable care, section 818.6 inspection immunity applies.

---

[1] All further statutory references are to the Government Code unless otherwise stated.

# FACTUAL AND PROCEDURAL BACKGROUND

## A. Overview

This case arises from an arson fire at a commercial building in Los Angeles which killed two individuals. The survivors of the deceased filed several suits against the City. Pink Selkin, who was also trapped in the fire and survived, filed a separate suit, seeking damages for her permanent injuries, including severe burns over more than three-quarters of her body.[2] Plaintiffs' theory of liability is that because City employees had actual knowledge of obvious fire safety hazards, the City had a mandatory duty to ensure that the substandard conditions were addressed, and because the City's knowledge was not in any way related to a building inspection, the inspection immunity statute does not protect the City from liability for its failure to fulfill its mandatory duties.

---

[2] Although the survivors' suits appear to have been consolidated before the trial court, Selkin's suit proceeded separately but before the same trial court judge until summary judgment, when the two proceedings were related and the subject of a single minute order granting summary judgment. In April 2025, we ordered the two appeals consolidated for all purposes. We give a common summary of the underlying facts and procedural history, noting distinctions only when relevant to our analysis.

3

## B.    Demurrer

As relevant here, the trial court denied the City's demurrers to plaintiffs' complaints asserting inspection immunity; the court reasoned there was a possibility of liability if facts demonstrated that without any inspection, City officials who witnessed unlawful conditions had the authority or duty to act based on their personal observations.  The City filed answers, and the parties engaged in discovery.

## C.    Summary Judgment Motion

The City moved for summary judgment against plaintiffs, making a number of arguments, including that the statutes and municipal code sections relied upon by plaintiffs did not impose a mandatory duty on the City, and that even if a mandatory duty applied, the inspection immunity statute precluded liability. Plaintiffs' opposition argued the legal questions of whether a mandatory duty or inspection immunity applied.  On the question of whether the City had a mandatory duty to take action, plaintiffs presented evidence of the safety hazards observed by City personnel.

The evidence presented to the trial court at summary judgment established that between 2014 and 2021, police officers responding to the property observed various fire safety issues and were aware that individuals were living in the commercial building.  In addition, the fire department received two customer service requests regarding an alleged marijuana grow operation at the property, and the fire department made two online

4

requests to the Los Angeles Department of Building and Safety (DBS). A DBS staff member testified that DBS is not trained in matters concerning unlawful growing of marijuana, however, and therefore DBS forwarded the requests to the police department.[3]

The trial court granted the City's motion. In its minute order, the court reviewed the various statutes and municipal code sections plaintiffs relied upon to establish mandatory duty liability under section 815.6, but ultimately found it unnecessary to determine which, if any, of the provisions imposed a mandatory duty. As the court explained, "Whether each of these statutes/ordinances create a mandatory duty applicable to Plaintiffs' cause of action would require the statutory interpretation of each. The Court finds such an analysis unnecessary in light of the City's argument that it is immune from any mandatory duty under [Government Code section] 818.6." The trial court found the City was immune from liability based on cases that broadly construe inspection immunity under section 818.6.

Plaintiffs filed a premature notice of appeal, but in the interests of justice, we deem the appeal to be taken from the judgment entered on November 20, 2024.

---

[3] Based upon the appellate briefing and the trial court's minute order, we understand that no party presented evidence that any DBS personnel inspected the property or personally observed any substandard conditions of the property.

# DISCUSSION

## A.    Standard of Review

The purpose of summary judgment "is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)  "A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)" (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)  We generally apply a de novo standard of review to a trial court's decision to grant summary judgment, "considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports.  [Citation.]" (*Ibid*.)

Keeping the standard of review in mind, we will independently determine whether the City was entitled to judgment as a matter of law under the immunity provided by section 818.6.

## B.    Government Tort Liability

The Act is a comprehensive statutory scheme governing liabilities and immunities of public entities and public employees for torts.  (*County of Santa Clara v. Superior Court* (2023) 14 Cal.5th 1034, 1046–1047 (*Santa Clara County*).)  Part of the overarching purpose of the Act is to "shield[] public entities from

6

tort claims seeking money damages." (*Santa Clara County*, at p. 1049.)  Section 815 outlines the overall structure of the Act. Section 815, subdivision (a), establishes that "there is no such thing as common law tort liability for public entities; a public entity is not liable for an injury '[e]xcept as otherwise provided by statute.'" (*Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 803.)  "But even when there are statutory grounds for imposing liability, subdivision (b) of section 815 provides that a public entity's liability is 'subject to any immunity of the public entity provided by statute.'" (*Id.* at p. 804.)

Relevant to this case, where plaintiffs allege that the City was under a mandatory duty to abate obvious fire and safety hazards about which City personnel had direct knowledge, section 815.6 provides that "[w]here a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."  However, section 818.6 provides a specific statutory immunity for inspections:  "A public entity is not liable for injury caused by its failure to make an inspection, or by reason of making an inadequate or negligent inspection . . . for the purpose of determining whether the property complies with or violates any enactment or contains or constitutes a hazard to health or safety."

7

## C. Mandatory Duty

### 1. *Applicable Law*

"Government Code section 815.6 has three elements that must be satisfied to impose public entity liability: (1) a mandatory duty was imposed on the public entity by an enactment; (2) the enactment was designed to protect against the particular kind of injury allegedly suffered; and (3) the breach of the mandatory statutory duty proximately caused the injury." (*B.H. v. County of San Bernardino* (2015) 62 Cal.4th 168, 179 (*B.H.*); see also *Guzman v. County of Monterey* (2009) 46 Cal.4th 887, 898 (*Guzman*); *Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 498–499 (*Haggis*).)

"First and foremost, application of section 815.6 requires that the enactment at issue be *obligatory,* rather than merely discretionary or permissive, in its directions to the public entity; it must *require*, rather than merely authorize or permit, that a particular action be taken or not taken. [Citation.] It is not enough, moreover, that the public entity or officer have been under an obligation to perform a function if the function itself involves the exercise of discretion." (*Haggis, supra*, 22 Cal.4th at p. 498; see also *B.H., supra*, 62 Cal.4th at pp. 180–181.) "Whether an enactment creates a mandatory duty is a question of law. (*Haggis*, at p. 499.)" (*Danielson v. County of Humboldt* (2024) 103 Cal.App.5th 1, 14.) " 'Whether a particular statute is intended to impose a mandatory duty, rather than a mere obligation to perform a discretionary function, is a question of statutory interpretation for the courts.' [Citation.]" (*Haggis, supra*, 22 Cal.4th at p. 499.) While statutory language is an

important guide, the use of the term "shall" in a legislative provision "does not necessarily create a mandatory duty; there may be 'other factors [that] indicate that apparent obligatory language was not intended to foreclose a governmental entity's or officer's exercise of discretion.' (*Morris v. County of Marin* (1977) 18 Cal.3d 901, 910, fn. 6 (*Morris*); see *Haggis, supra*, 22 Cal.4th at p. 499, quoting *Morris*.)" (*Guzman, supra*, 46 Cal.4th at p. 899.)

"Second, but equally important, [Government Code] section 815.6 requires that the mandatory duty be 'designed' to protect against the particular kind of injury the plaintiff suffered. The plaintiff must show the injury is ' "one of the consequences which the [enacting body] sought to prevent through imposing the alleged mandatory duty." ' [Citation.] Our inquiry in this regard goes to the legislative *purpose* of imposing the duty. That the enactment 'confers some benefit' on the class to which plaintiff belongs is not enough; if the benefit is 'incidental' to the enactment's protective purpose, the enactment cannot serve as a predicate for liability under [Government Code] section 815.6. [Citation.]" (*Haggis, supra*, 22 Cal.4th at p. 499.)

"If these two prongs are met, the next question is whether the breach of the duty was a proximate cause of the plaintiff's injury." (*Guzman, supra*, 46 Cal.4th at p. 898.)

A general assertion that a public entity has a mandatory duty is insufficient to support a claim for liability under section 815.6. In *Washington v. County of Contra Costa* (1995) 38 Cal.App.4th 890 (*Washington*), following the accidental release of toxic gases from rail tank cars stored on private property, plaintiffs sued the county, alleging that various sections of the Health and Safety Code included mandatory language, and that

9

based on those sections "it must be concluded that the County therefore has a general mandatory duty to ensure that there will be no uncontrolled release of hazardous material." (*Id*. at p. 896.) The appellate court rejected plaintiffs' argument, holding instead that "[i]t is not enough that some statute contains mandatory language. In order to recover plaintiffs have to show that there is some *specific* statutory mandate that was violated by the County, which violation was a proximate cause of the accident. [Citation.]" (*Id*. at pp. 896–897.)

### 2.    *Analysis*

The City contends that summary judgment in its favor was warranted because the statutes and municipal codes upon which plaintiffs rely do not require the City to take specific action based upon the evidence that police officers observed safety hazards and a fire chief received and forwarded to DBS a customer service request to investigate an illegal marijuana grow operation. We too are not entirely convinced that the statutes and municipal code sections plaintiffs rely upon require the City to take specific action, based solely on a police officer's observation of an open and obvious fire or safety violation. However, rather than reviewing each of the enactments individually to determine whether it requires ministerial or discretionary action, we—like the trial court—find it unnecessary to determine whether City has successfully shown as a matter of law that it was not under a mandatory duty for purposes of liability under section 815.6.

Because inspection immunity under section 818.6 is available to a public entity, regardless of whether the entity's duty to detect, address, or abate a health or safety hazard is

10

construed as mandatory or discretionary (*Cochran v. Herzog Engraving Co.* (1984) 155 Cal.App.3d 405, 411 (*Cochran*)), we turn to the legal question of whether section 818.6 inspection immunity applies.

## D.    Inspection Immunity

### 1.    *Applicable Law*

Section 818.6, the inspection immunity statute, "was intended to grant absolute immunity from liability for the negligent inspection of private property to determine whether such property constitutes a hazard to health or safety." (*Clayton v. City of Sunnyvale* (1976) 62 Cal.App.3d 666, 671 [rejecting liability arising from negligent review of or failure to inspect patently dangerous stairwell].)  The courts have interpreted section 818.6 very broadly, immunizing public entities from liability not just from negligent inspections (*Cochran, supra*, 155 Cal.App.3d at pp. 408–410 [negligent inspection or negligent failure to advise property owner of additional fire safety precautions]; *Washington, supra*, 38 Cal.App.4th at pp. 897–898 [negligent inspection of manufacturing facility led to release of hazardous materials]), but also from the failure to inspect (*Stevenson v. San Francisco Housing Authority* (1994) 24 Cal.App.4th 269, 273 [negligent failure to inspect a building]; *Powell v. State of California* (1991) 234 Cal.App.3d 910, 915 [negligent failure to inspect daycare premises]), and from the failure to take certain actions after conducting an inspection (*Haggis, supra*, 22 Cal.4th at p. 504 [failure to record the results of an inspection with the county recorder]).

11

"As the legislative comment to section 818.6 explains: 'Because of the extensive nature of the inspection activities of public entities, a public entity would be exposed to the risk of liability for virtually all property defects within its jurisdiction if this immunity were not granted.' In light of such purpose, we believe that section 818.6 must reasonably be construed to insulate a public entity from any liability which might arise as a result of an entity's failure to detect noncompliance with one of the myriad safety regulations contained in local or statewide building codes." (*Morris, supra*, 18 Cal.3d at p. 916.)

The California Supreme Court and the courts of appeal have explained that the rationale for interpreting section 818.6 liberally and applying inspection immunity broadly arises not just from the ubiquity and purpose of the inspection process, but also from the breadth of what an inspection encompasses. (See *Haggis, supra*, 22 Cal.4th at pp. 504–505, quoting *Cochran, supra*, 155 Cal.App.3d at pp. 411–412.)

In *Cochran*, the employee of an engraving company died in a fire at a company plant, and the employee's relatives sought to hold the city liable for failing to advise the company of recommended safeguards against fire, despite evidence that the city learned in a prior inspection that the company used magnesium, a very combustible material. (*Cochran, supra*, 155 Cal.App.3d at pp. 408–410.) The reviewing court rejected plaintiffs' argument that the inspection immunity should be construed such that once a public entity had knowledge of hazardous conditions, the entity would not be immune for negligently breaching a duty to advise and recommend ways to address the risks. (*Id.* at p. 411.) The court explained that such a restrictive reading would be arbitrary and contrary to the

12

statute's purpose of protecting public entities from liability in all aspects of safety inspections and hazard reduction. (*Id.* at pp. 411–412.) "Public safety inspection necessarily encompasses making an informed determination that given conditions are in fact hazardous or not in compliance with regulations, officially reporting these hazardous conditions, and *fully disclosing them to all interested parties.* Appellants' narrow interpretation of the immunity statute would . . . encourage municipalities not to make any efforts to learn about possible . . . hazards." (*Cochran, supra*, 155 Cal.App.3d at pp. 411–412, italics added.)

In *Harshbarger v. City of Colton* (1988) 197 Cal.App.3d 1335, 1345–1348 (*Harshbarger*), the reviewing court relied on *Cochran* to conclude that inspection immunity also barred a claim of negligent hiring. The plaintiffs in *Harshbarger* were homeowners who incurred significant costs after two city inspectors incorrectly certified that construction work was proceeding in compliance with applicable building codes. (*Id.* at p. 1338.) The court rejected plaintiffs' argument that the city was liable for failure to use due care in hiring employees and discharging its duty under Health and Safety Code section 17960, because the city had voluntarily assumed a duty to hire qualified inspectors. After agreeing that Health and Safety Code section 17960 imposed a mandatory duty on the city to enforce provisions relating to construction of dwellings, the court pointed out that "inspection of property for compliance with codes and regulations is the means by which the public entity carries out its mandatory duty of enforcing compliance with codes and other building standards," and that the inspection immunity statute "grants absolute immunity whether the duty to inspect is construed as mandatory or discretionary, whether the act of inspection is

13

called ministerial, discretionary or even voluntary." (*Id*. at pp. 1346–1347.)

The California Supreme Court in *Haggis, supra*, 22 Cal.4th at pp. 504–506, agreed with the *Cochran* court's approach of broadly construing the inspection immunity statute to encourage public entities to learn of possible health and safety hazards. It held that even when the city knew of a landslide hazard and had a mandatory statutory duty to record that information with the county recorder, the inspection immunity protected the city from liability. The court explained that "allowing liability for failure to fully report, by recordation, the results of an inspection, while immunizing the failure to make an inspection at all, would have the effect, contrary to the evident legislative intent, of discouraging municipal safety and health inspections. Even if plaintiff's first cause of action stated a valid claim for breach of a mandatory duty, therefore, section 818.6 would immunize the City from liability for that breach. [Citation.]" (*Id*. at p. 505.)

### 2. *Analysis*

Plaintiffs acknowledge that to the extent the inspection immunity statute is applicable, it overcomes any liability under the mandatory duty statute. They contend, however, that because the City's knowledge of the obvious health and safety violations arose independent of any inspection, the inspection immunity statute does not apply.

Plaintiffs draw the distinction that each of the cases finding the inspection immunity applicable still involved some relationship to an inspection activity, regardless of whether the inspection took place or not. They argue that because their

14

claims do not implicate a duty to conduct an inspection or to take action based on information obtained during an inspection, the inspection immunity does not apply. Instead, they argue that the City's liability arises from its knowledge of the obvious safety and fire hazards that police officers witnessed on at least eight occasions over the course of over seven years.

We are not convinced by plaintiffs' argument. Plaintiffs do not specify what statutory language requires the City (as a public entity) to take specific ministerial action based on the officers' observations. (*Washington, supra*, 38 Cal.App.4th at pp. 897–898 [plaintiffs must identify a specific statutory mandate, the violation of which proximately caused injury].) As the court explained in *Harshbarger, supra*, 197 Cal.App.3d at page 1346, inspections are the "means by which the public entity carries out its mandatory duty of enforcing compliance" with the relevant fire, safety, and building codes. Plaintiffs have not relied upon or cited to any statute requiring a police officer who observes an open and obvious fire and safety hazard to report it to DBS or any other public entity. (Compare *B.H., supra*, 62 Cal.4th at pp. 180–181.) To the contrary, while plaintiffs point to language in *Harshbarger* to argue that Health and Safety Code section 17960 imposes upon city building departments a mandatory duty to enforce rules and regulations pertaining to building safety, they ignore the language that follows immediately after, explaining how the mandatory duty is satisfied: "inspection of property for compliance with codes and regulations is the means by which the public entity carries out its mandatory duty of enforcing compliance with codes and other building standards; and section 818.6 specifically provides immunity to public entities

15

for failure to make any, or adequate, inspection of property." (*Harshbarger, supra*, 197 Cal.App.3d at p. 1346.)

To saddle the City, as a public entity, with the knowledge attributable to individual city personnel, based upon an unspecified mandatory duty untethered to the inspection process, runs contrary to the law on mandatory duties and inspection immunity. When a legislative body seeks to impose a mandatory duty on a public entity or some department within a public entity, it does so expressly, even identifying the particular department that must carry out the duty. While some provisions of the Los Angeles Municipal Code might be fairly read as imposing a mandatory duty to abate when DBS knows about a safety hazard (see, e.g., L.A. Mun. Code § 91.8901.1, et seq.; & § 91.8903.1.1), there is no evidence here that any DBS employee knew of the hazards. Plaintiffs have also not identified any statute imposing a mandatory duty for law enforcement or fire officials to cross-refer building safety issues to DBS. (See, e.g., *B.H., supra*, 62 Cal.4th at pp. 180–183 [law enforcement agencies have a statutory duty to cross-report to the child welfare agency every known or suspected instance of child abuse or neglect reported to it].)

We disagree with plaintiffs' argument that the evidence gave rise to a reasonable inference that building and safety personnel had knowledge of a code violation. Instead, it is reasonable to infer that the only way for DBS to be charged with knowledge that a particular property is "substandard," would be for an inspection to occur, in which case, even if DBS or the City was under a mandatory duty to abate the hazardous condition, regardless of whether DBS failed to inspect, or the inspection negligently failed to identify the open and obvious hazards, or

16

DBS failed to take action to abate, the inspection immunity would bar liability. We see no reason to apply a different standard simply because the City is charged with "knowledge" obtained through an employee unaffiliated with DBS.

### 3. *Plaintiffs' Reliance on Non-Binding Cases*

Plaintiffs point to two instances where a trial court or an out-of-state court found inspection immunity inapplicable when the public entity's mandatory duty was based on knowledge obtained independent of an inspection. Neither one is applicable or persuasive. (*Robertson v. Saadat* (2020) 48 Cal.App.5th 630, 649 [appellate court decisions "are not bound by rulings of trial courts or courts of other jurisdictions"].)

#### a. Trial Court Decision in the Ghost Ship Case

*Gregory et al. v. Ng et al.,* Alameda County Superior Court case number RC16843631 is a 2018 trial court decision overruling a demurrer to plaintiffs' claim that the City of Oakland was under a mandatory duty to act based upon knowledge of dangerous conditions at a commercial property known as the Ghost Ship, and rejected the city's argument that various immunities, including inspection immunity and discretionary act immunity, barred plaintiffs' claim. We decline to give the decision any persuasive weight because it is neither binding nor comparable to the current case. First, "[t]rial court decisions are not precedents binding on other courts . . . . [Citation.]" (*Harrott v. County of Kings* (2001) 25 Cal.4th 1138, 1148.) In addition, the decision was made at the demurrer stage,

17

and the trial court noted that "City personnel responsible for enforcing the building codes at issue—other than police officers and firefighters—were aware of the dangerous conditions at the Ghost Ship."  Here, in contrast, the trial court was deciding a motion for summary judgment, and the only evidence of the city's knowledge of the property's safety issues came from police officers and one fire chief who was aware of a marijuana grow operation in the building.  We also agree with the City that it would be speculative to assume that those City personnel who witnessed safety issues such as inadequate lighting or an electronically locking door would recognize these as code violations, much less violations requiring immediate abatement efforts.

### b.  Out-of-State Opinion

In *Drake by Drake v. Mitchell Community Sch.* (1994) 628 N.E.2d 1231 (*Drake)* the family of an Indiana student who contracted histoplasmosis from pigeon droppings in a grain elevator repurposed for a Halloween fundraiser sued the school district.  Plaintiffs point to *Drake* as an example of a court rejecting inspection immunity based on a teacher's "specific knowledge that the grain elevator posed a risk of [the illness] independent of any investigation." (*Id*. at p. 1234.)  However, as the *Drake* court expressly recognized, school personnel have a duty to care for the safety of children in their care, and Indiana law strictly construes immunity protection.  (*Ibid*.)  In contrast, the California Supreme Court has affirmed a broad construction of inspection immunity to include not just the process of inspection, but also the additional process of reporting or

18

recording the results of that process.  (*Haggis, supra*, 22 Cal.4th at pp. 503–504.)  Particularly because California decisional law construes immunity protection under the Act more broadly, we do not find plaintiffs' reliance on an out-of-state decision to be persuasive.  (*In re S.G.* (2024) 100 Cal.App.5th 1298, 1316, fn. 6 [out-of-state authority is not binding precedent, nor persuasive in light of supreme court authority]; but see *Kanter v. Reed* (2023) 92 Cal.App.5th 191, 208 [out of state authority can provide useful guidance in the absence of on point California case law].)

For the above reasons, we hold that when the information about a building's safety hazards is obtained independent of any inspection under the circumstances involved here—where the alleged safety hazards were observed by city employees who had no duty to cross-report information about the hazards to DBS or to take any specific steps to mitigate the observed hazards—the inspection immunity applies.

## DISPOSITION

The judgment is affirmed.  Costs on appeal are awarded to defendant and respondent City of Los Angeles.

NOT TO BE PUBLISHED.


MOOR, J.

WE CONCUR:


HOFFSTADT, P. J.


KUMAR, J.*

---

* Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20